**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JASON DODD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-19-00701-JD |
| | ) |
| SAFECO INSURANCE COMPANY | ) |
| OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court are multiple motions regarding discovery disputes between Jason Dodd and Safeco Insurance Company of America ("Safeco"). Dodd has filed three motions to compel. [Doc. No. 97 (which relates to Doc. No. 25), Doc. No. 100, and Doc. No. 102]. Safeco's filings are two motions to compel, a motion to quash, and a motion for a protective order. [Doc. No. 104, Doc. No. 105, Doc. No. 113, and Doc. No. 137]. Upon consideration of the relevant briefing and applicable discovery rules, the Court rules on these motions as follows.

## I.    BACKGROUND

In 2015, Dodd purchased a vehicle from an automobile dealer. When he purchased this vehicle, Dodd had not paid off the loan against his prior vehicle. The dealer, however, allowed Dodd to combine the amount that remained from the prior loan with the loan he took out on the newly purchased vehicle.

In August 2017, Dodd purchased an automobile insurance policy from Safeco. The policy stated that "[i]n the event of a total loss to a vehicle," Safeco "will pay any unpaid

amount due on the lease or loan for your covered auto less" any "carry-over balances from previous loans or leases." [Doc. No. 1-2 at 5, 57].[1]

In April 2018, Dodd was involved in an automobile accident that rendered his vehicle a "total loss" within the meaning of the policy. From the time Dodd bought his vehicle in 2015 till the automobile accident in 2018, he made payments on his loan. When Dodd filed a claim for coverage, Safeco paid him less than what he believed he was owed under the terms of the policy.

Essentially, the parties disagree regarding the proper construction of the term "carry-over balances" in the policy. Safeco maintains it means the original balance that Dodd carried over from his initial loan. Dodd contends that it is the current balance of the loan he carried over—*i.e.*, the original balance minus payments he made on the loan from 2015 to 2018.

## II.    **LEGAL STANDARDS**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[1] The Court uses page numbering from the CM/ECF stamp at the top of docket filings in this order.

Further, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed" by the federal or local rules if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). The Court may also limit discovery if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). The scope of relevance is broader in discovery than at trial. *See* Fed. R. Civ. P. 26(b)(1) (explaining that discovery need not be admissible at trial to be relevant).

The Federal Rules of Civil Procedure then set forth other requirements regarding the methods of discovery. First, for interrogatories, the parties may serve on any other party written interrogatories that "relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). To the extent it is not objected to, the responding party must answer each interrogatory "separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4). Second, under Rule 34, a party may serve on any other party a request for production within the scope of Rule 26(b) to produce and permit the requesting party to inspect, copy, test, or sample designated documents, electronically stored information, or tangible things in the responding party's possession, custody, or control. Fed. R. Civ. P. 34(a)(1). Third, regarding requests for admission, under Rule 36, "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to

3

. . . facts, the application of law to fact, or opinions about either [and] the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1).

"Generally, when discovery on its face appears to be relevant, the responding party bears the burden of establishing that the requested discovery (1) does not fall within the scope of relevant evidence, or (2) is of such marginal relevance that the potential harm of discovery is outweighed by the benefit." *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 275 (D. Colo. 2022); *see also Caves v. Beechraft Corp.*, No. 15-CV-125-CVE-PJC, 2016 WL 158538, at *2 (N.D. Okla. Jan. 13, 2016) ("When the requested discovery appears relevant, the party opposing discovery has the burden of establishing the lack of relevance by demonstrating that the requested discovery does not come within the scope of relevance set forth in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."). "But when the relevance of a discovery request or device is not apparent on the face of the request or device itself, the proponent of the discovery bears the burden of making an initial showing of relevance." *Carlson*, 341 F.R.D. at 275.

Ultimately, the district court has broad discretion over the control of discovery, and the Tenth Circuit will not set aside discovery rulings absent an abuse of that discretion. *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995) (recognizing that "[c]ontrol of discovery is entrusted to the sound discretion of the trial courts" (citation omitted)); *GWN Petrol. Corp. v. Ok-Tex Oil & Gas, Inc.*, 998 F.2d 853, 858 (10th Cir. 1993) ("Discovery rulings . . . are reviewed for an abuse of discretion.").

This standard applies equally to motions to compel, motions to quash, and motions for protective orders. *See, e.g.*, *Motley*, 71 F.3d at 1550 (noting that "a denial of a motion to compel discovery will not be disturbed absent abuse of discretion" (citation omitted)); *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir. 1995) ("Because the decision to grant a protective order under Fed. R. Civ. P. 26(c) is vested in the district court's discretion, we will only reverse the court's ruling if that discretion was abused."); *Gulley v. Orr*, 905 F.2d 1383, 1386 (10th Cir. 1990) (acknowledging that a "motion to quash a subpoena is left to the sound discretion of the trial court"). Abuse of discretion occurs only when the judge renders "an arbitrary, capricious, whimsical, or manifestly unreasonable" decision. *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999) (citation omitted); *see Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 853 (10th Cir. 1996) (explaining that the appellate court "will not disturb a trial court's decision absent a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances" (internal quotation marks and citation omitted)).

　　With these standards in mind, as well as those discussed below, the Court considers each of the discovery motions before it.[2]

---

[2] Other than grouping some of the discovery requests at issue in the parties' discovery motions, the Court states the discovery requests as they appear in the parties' exhibits, without indicating "[sic]," even though many of the discovery requests have grammatical, spelling, or other typographical errors.

III.    <u>ANALYSIS</u>

At the outset, the Court notes that "'[i]f a contract is complete in itself, and when viewed as a totality, is unambiguous, its language is the only legitimate evidence of what the parties intended. That intention cannot be divined from extrinsic evidence but must be gathered from a four-corners' examination of the instrument.'" *Otis Elevator Co. v. Midland Red Oak Realty, Inc.*, 483 F.3d 1095, 1101–02 (10th Cir. 2007) (quoting *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 546 (Okla. 2003)). However, "[i]f a contract is ambiguous, extrinsic evidence is admissible to resolve the ambiguity." *Id.* at 1102.

Although both parties initially maintain the contract is unambiguous, in the alternative, Dodd argues that any ambiguity should be resolved in his favor, and he seeks discovery of extrinsic evidence to that end. The Court previously determined that the legal determination about coverage was better reserved for summary judgment and allowed the parties to complete discovery to prepare accordingly. *See* [Doc. No. 96].

A. <u>Dodd's Discovery Motions</u>

1. <u>First Motion [Doc. Nos. 97, 25]</u>

In light of the Court's order [Doc. No. 96], which stated it would wait to make a legal determination regarding the definition of the term "carry-over balances" until the parties filed dispositive motions, Dodd seeks to have his original motion to compel [Doc. No. 25] reinstated.[3] The Court originally struck Dodd's motion as premature [Doc.

_____

[3] This motion to compel was fully briefed. *See* [Doc. Nos. 25, 32, 50].

84], but because the Court agrees that the timing is now appropriate, it grants Dodd's motion for reinstatement [Doc. No. 97] and addresses the substance of his first motion to compel and subsequent briefing.[4]

As a threshold issue, Dodd argues that Safeco waived any objections it made based on privilege or work product because it did not timely provide Dodd with a privilege log as required by Federal Rule of Civil Procedure 26(b)(5). But as Safeco explained in its response [Doc. No. 32 at 31; Doc. No. 32-5], Safeco timely provided Dodd with a detailed privilege log (and other discovery materials) shortly after the Court entered a protective order [Doc. No. 24]. So, the Court determines that Safeco has not waived its privilege or work product doctrine objections and denies Dodd's motion on this basis.

   a. *Request for Admission No. 1: Admit that the term "carry-over balances" within the Auto Loan/Lease Coverage is not used in a manner intended to convey a specific technical concept but should, instead, be interpreted in accordance with its plan and ordinary meaning.*

In its response, Safeco states it "has agreed to supplement its answers" to this request for admission. [Doc. No. 32 at 18]. But Dodd maintains that, so far, Safeco has not done so. In light of Safeco's agreement and lack of substantive argument in its response, the Court grants Dodd's motion as to Request for Admission No. 1.

   b. *Request for Admission No. 2: Admit you are not aware of any Extrinsic Evidence that could assist the Court in resolving the meaning of the term "carry-over balances" within the Auto Loan/Lease Coverage Form should the Court conclude that terms is ambiguous.*

---

[4] Dodd provides a list of discovery requests he seeks to compel in various listings in his motion, but the argument in the motion itself contains additional discovery requests. *Compare* [Doc. No. 25 at 3, 7, and 31], *with* [*id.* at 19–20, 23–24].

Similarly, in its response, Safeco states it "has agreed to supplement its answers" to this request for admission. [Doc. No. 32 at 18]. But Dodd maintains that, so far, Safeco has not done so. Considering Safeco's agreement and lack of substantive argument in its response, the Court grants Dodd's motion as to Request for Admission No. 2.

       c.   *Request for Admission No. 5 and Interrogatory No. 12: Admit that had the sum of your mathematic calculation concerning the amount, if any, Plaintiff was entitled to receive for Auto Loan/Lease Coverage in connection with Plaintiffs Claim under the Policy had been a number greater than zero, you would have paid Plaintiff some amount for Auto Loan/Lease Coverage.*[5]

Safeco argues that this request is impermissibly hypothetical. The Court grants Dodd's motion as to these requests because they are relevant to the dispute and an answer would narrow the issues before the Court. Fed. R. Civ. P. 36(a)(1) (specifying that a written request to admit covers the "facts, the application of law to fact, or opinions about either"); *cf. Caves v. Beechraft Corp.*, No. 15-CV-125-CVE-PJC, 2016 WL 158538, at *3–4 (N.D. Okla. Jan. 13, 2016) (finding defendants' responses to admissions, which included admissions and denials of relevant hypotheticals, to have been proper and sufficiently specific to the parts defendants were admitting and denying).

       d.   *Interrogatory No. 5: Identify when the Auto Loan/Lease Coverage Form was first approved by the Oklahoma Insurance Department or otherwise sold in Oklahoma.*

According to Dodd, Safeco objects to this interrogatory because it is not limited in time. This request is relevant to Dodd's bad faith claim because the duration of any

---

[5] Interrogatory No. 12 states: "Explain each reason why, if applicable, you denied Plaintiffs Request for Admission No. 5." [Doc. No. 25-4 at 4].

alleged wrongdoing is relevant for determining punitive damages. *See* 23 Okla. Stat.
§ 9.1(A)(3). The interrogatory asks when a particular event took place, so it is not
necessary to limit this request to a certain time frame. Safeco has not shown that
responding to this request would impose an undue burden. Therefore, the Court grants
Dodd's motion as to this request.

  e. *Interrogatory No. 7: Describe what meaning you ascribe to the term "carry-over balances" as used in the Auto/Loan Lease Coverage Form.*

  Safeco responded to this interrogatory stating "it ascribes the ordinary, literal, and
plain meaning to the term 'carry-over balance.'" [Doc. No. 25-4 at 2]. The Court
concludes Safeco has adequately answered and denies Dodd's motion as to this
interrogatory.

  f. *Interrogatory No. 8 and Request for Production No. 12: Identify and describe all Extrinsic Evidence you believe the Court should rely upon to resolve the meaning of the term "carry-over balances" within the Auto Loan/Lease Coverage Form should the Court conclude that terms is ambiguous.*[6]

  Safeco argues these requests are irrelevant, burdensome, and premature. Dodd has
raised an alternative argument for his breach of contract claim that the relevant phrases in
the agreement are ambiguous, and he has brought a claim for breach of the duty of good
faith and fair dealing. *See* [Doc. No. 1-2; Doc. No. 60 at 8; Doc. No. 87 at 3; Doc. No.

---

  [6] Request for Production No. 12 seeks the production of extrinsic evidence that
Safeco believes the Court should rely upon to resolve the meaning of the term "carry-over balances" within the coverage provision, if the Court concludes the term is
ambiguous. *See* [Doc. No. 25-5 at 6] ("Produce all documents that summarize, describe,
evidence, or comprise any Extrinsic Evidence you believe the Court should rely upon to
resolve the meaning of the term 'carry-over balance' within the Auto Loan/Lease
Coverage Form should the Court conclude the term is ambiguous.").

128 at 29–31]. The information sought by these requests is relevant to these claims and

proportionate to the needs of the case. *See Westfield Ins. Co. v. Icon Legacy Custom

Modular Homes*, 321 F.R.D. 107, 113–14 (M.D. Pa. 2017) (holding that a party cannot

compel extrinsic evidence bearing on the interpretation of an insurance policy absent a

showing or allegation of ambiguity and reasoning that if "a bad faith claim is still being

litigated at the time of the request," that "makes discoverability more likely, yet it by no

means guarantees it"). Safeco has not shown that responding to these requests would

impose an undue burden. Moreover, these requests are facially limited to this action with

the reference to the Court, so they are not overbroad, unduly burdensome, vague, or

ambiguous. Additionally, the purpose of these requests appears to be to narrow and

sharpen the issues, which is a permissible use of discovery. *Cf.* Fed. R. Civ. P. 33(b)

advisory committee's note to 1970 amendment (describing as "a major purpose of

discovery" requests that "narrow[] and sharpen[] the issues"). Thus, the Court grants

Dodd's motion as to both requests. Of course, if Safeco takes the position that the Court

should not rely on extrinsic evidence and Safeco is not relying on any extrinsic

evidence—or if the answers are none—then Safeco should state or explain that in its

responses to these requests.

   g. *Interrogatory No. 9 and Request for Production No. 13: Identify and describe
   all sales and marketing materials, brochures, product guides, etc. prepared and
   issued by you or on your behalf that describe, discuss, interpret, and/or in any
   way concern the Auto Loan/Lease Coverage Form.*[7]

---

[7] Request for Production No. 13 asks Safeco to "[p]roduce any and all sales and
marketing materials, brochures, product guides, etc. prepared and issued by you or on
your behalf that describe, discuss, interpret, and/or in any way concern the Auto
Loan/Lease Coverage Form." [Doc. No. 25-5 at 6].

Safeco objected to these requests on the grounds that they are irrelevant, vague, ambiguous, overbroad, unduly burdensome, and not proportionate to the needs of the case. Dodd argues that the requests are facially relevant because they go to Safeco's view and understanding of the coverage offered.

The Court agrees with Dodd that the requests are facially relevant to the claims and issues. For instance, in his complaint, Dodd alleges that Safeco acted in bad faith by refusing to pay coverage "when Defendant knew that Plaintiff was entitled to those benefits," by withholding payment "even though Defendant knew Plaintiff's claim for those benefits was valid," and by "refusing to honor Plaintiff's claim by knowingly misconstruing and misapplying provisions, terms and/or definitions of the subject Policy." [Doc. No. 1-2 at 7].

However, the Court also agrees with Safeco that the extent of this discovery is disproportionate to the needs of the case and will limit the requests. *See* Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."). Specifically, given that Dodd, a resident of Oklahoma, purchased his policy in Oklahoma, the Court limits the requests to materials prepared and issued by Safeco for the Oklahoma market. The Court also limits the timeframe to 2015 to 2018—around the time Dodd purchased his vehicle and policy. The Court overrules all other objections raised by Safeco. With these limitations on the extent of this discovery, the Court grants Dodd's requests.

    h.  *Interrogatory No. 10: Identify any legal opinions, if any, you relied upon prior to processing and adjusting Plaintiff's Claim, to form or inform your interpretation of the term "carry-over balances" within the Auto Loan/Lease Coverage Form.*

Safeco explains, and Dodd does not dispute, that it agreed to supplement its answer to state whether its adjuster relied on any legal opinions in relation to the adjustment of Dodd's claim. [Doc. No. 32 at 20]. Upon its review of the interrogatory, this strikes the Court as the appropriate read and scope of this request, and no arguments have been made to the contrary.[8] Any other read would yield a request that would be beyond the scope in Rule 26(b)(1) and disproportionate to the needs of the case. The Court, therefore, grants the interrogatory to this extent.

    i.  *Request for Production No. 4: Produce all documents that discuss, summarize, evidence, comprise, or concern any claims manuals, underwriting manuals, memorandums, policy statements, inter-office, interdepartmental or inter-company correspondence, letters, industry journals, trade magazines, dictionaries or other writings that relate to the handling of claims under the Auto Loan/Lease Coverage Form.*

Safeco argues that the sheer breadth of this request renders it disproportionate to the needs of the case, vague, and overbroad. The Court agrees and denies Dodd's motion as to this request since it is not proportional to the needs of the case and the burden of Safeco complying with the request outweighs its likely benefit.

    j.  *Requests for Production Nos. 8, 9, 10, and 11: Produce all documents summarizing, identifying, describing, evidencing, or comprising any actuarial memoranda, methodologies, assumptions, risk outlines, cost analyses, rating plans, loss reserve opinions, loss projections, expected loss ratio, insuring risk,*

---

[8] While the parties focus their arguments on production of legal opinions, *see* [Doc. No. 32 at 20–21 and Doc. No. 50 at 6], the Court does not construe this interrogatory to seek production. Rather, it asks Safeco to "identify." [Doc. No. 25-4 at 3]. Safeco's proffered supplementation is appropriate.

*exposure factors, or expense elements associated with the Auto Loan/Lease Coverage Form; and all documents and communications exchanged between you and the Oklahoma Insurance Commission concerning the approval of the Auto Loan/Lease Coverage Form and the request, approval, and/or denial of any rate and/or premium increases for that form.*

Dodd argues these requests are proper because insurance policies are developed, analyzed, and priced in accordance with actuarial principles, and that by determining when Safeco started selling and pricing the policy, Dodd can better assess the relevant time frame for other discovery. The Court agrees with Safeco that these requests, as stated, are overbroad and not appropriate or proportional to the needs of the case. Dodd's motion as to these requests is denied.

    k.  *Request for Production No. 14: Produce any document, including any internal memoranda, that discuss, analyze, define, interpret, describe, or otherwise proffer the meaning of the term "carry-over balances" within the Auto Loan/Lease Coverage Form.*

Safeco objects to this request on the basis that it is irrelevant and overbroad. Dodd maintains the request is proper because in a bad faith failure-to-pay claim, a jury must determine whether the insurer's refusal to pay the claim in full was unreasonable under the circumstances. The Court agrees with Dodd. *See* OUJI-CIV 22.2 (3d ed.). If Safeco has internal policies mandating how "carryover balances" should be interpreted, whether it followed those policies would be probative as to whether it acted reasonably. The Court grants Dodd's motion as to this request.

    l.  *Request for Production No. 15: Produce any documents, including but not limited to communications, memoranda, guides, or manuals, that you relied upon prior to processing and adjusting Plaintiff's Claim, for purposes of forming or informing your interpretation of the term "carry-over balance" as used in the Auto Loan/Lease Coverage Form.*

Safeco objects to this request because it is overbroad and not proportionate to the needs of the case. The Court agrees. The Court denies Dodd's motion as to this request because its scope is extremely broad, and the burden of the proposed discovery outweighs any likely benefit. *See* Fed. R. Civ. P. 26(b)(1). Moreover, Dodd will receive a more appropriate scope of this type of information for his claim, to the extent it is relevant, pursuant to other requests in his motion that the Court has granted.

> m. *Request for Production No. 16: Produce any documents, including but not limited to communications, memoranda, guides, or manuals, that you provided or made available to any of your claims adjusters or other employees for purposes of training, teaching, instructing, or informing them as to the meaning of the term "carry-over balance" as used in the Auto Loan/Lease Coverage Form.*

Safeco explains that it has agreed to produce the guidelines for handling claims in effect during Dodd's claim. Dodd does not dispute this assertion in his reply or argue some other specific category of documents should be produced under the broad language of this request. Accordingly, the Court concludes this request has been resolved. Alternatively, to the extent it is still at issue, the Court denies anything further under this request for the same reasons it denied Request for Production No. 15.

> n. *Request for Production No. 17: Produce any documents discussing, memorializing, evidencing, depriving, or comprising the drafting history of the Auto Loan/Lease Coverage Form or any predecessor coverage provisions that in any way served as a basis for the creation thereof.*

Safeco argues this request is overbroad and does not seek discovery proportional to the needs of the case. The Court agrees. In this order, the Court has granted other requests that go more directly to the issues before it. But this request is not limited by

14

time, location, or topic, and, in fact, seeks production of "any predecessor coverage provisions." So, the Court denies Dodd's motion as to this request.

>  o. _Requests for Production Nos. 20 and 21: Produce all documents describing, discussing, evidencing, or comprising any internal memoranda and/or communications concerning Plaintiffs claim that occurred before and after Plaintiff filed Plaintiffs Petition._

Safeco agreed to provide Dodd with all non-privileged portions of his claim file since it was created before Dodd filed suit. Dodd does not dispute this in his reply. As to this request pre-lawsuit, Safeco has satisfied this request. However, Safeco objects to providing any documents concerning Dodd that occurred after he filed suit because they are protected by attorney client privilege and the work product doctrine. In the circumstances of this case, discovery after Dodd filed his lawsuit does not appear relevant on its face, and Dodd has not made an appropriate showing of relevance as the proponent given it is not facially apparent. The Court further agrees with Safeco that such materials would be privileged and denies Dodd's motion as to anything that occurred after he filed suit.

\*        \*        \*

To summarize, the Court grants in part and denies in part Dodd's first motion [Doc. No. 25]: as set forth and as limited above, the Court compels responses or answers by Safeco to Request for Admission Nos. 1, 2, and 5, Interrogatory Nos. 5, 8, 9, 10, and

12, and Requests for Production Nos. 12, 13, and 14; and it denies as to Interrogatory No.

7 and Request for Production Nos. 4, 8, 9, 10, 11, 15, 16, 17, 20, and 21.[9]

    **2.  <u>Second Motion [Doc. No. 100]</u>**[10]

        *a.  <u>Request for Admission No. 6 and Interrogatory No. 15: Admit you would have</u>*
        *<u>charged Plaintiff the same amount of premium for the Auto Loan/Lease</u>*
        *<u>Coverage available under the Policy for the Covered Auto if ceteris paribis</u>*[11]*<u>,</u>*
        *<u>Plaintiff had not combined the Prior Loan Amount into the Combined Loan.</u>*[12]

    In addition to challenging relevancy and proportionality, Safeco argues that these

requests are improper hypotheticals that require it to speculate. However, these requests

go to the reasonableness of Safeco's interpretation of the term "carryover balances,"

which is a proper consideration in a bad faith failure-to-pay claim. Additionally, because

insurance companies frequently provide quotes, the Court concludes these requests are

proportional to the needs of the case and are not unduly burdensome. Dodd's motion is

granted as to these requests.

---

    [9] Under Rule 37(a)(5), if a motion to compel "is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." However, in his first motion, Dodd represents to the Court that he does not request that the Court award him any attorney fees. [Doc. No. 25 at 8].

    [10] This motion reasserts several issues already raised in Dodd's first motion such as Interrogatory No. 7 and Request for Production No. 15. The Court does not readdress these arguments.

    [11] "Ceteris paribus" is Latin for "other things being equal." Black's Law Dictionary (12th ed. 2024).

    [12] Interrogatory No. 15 asks, "What amount of premium would you have charged Plaintiff for the Auto Loan/Lease Coverage provided under the Policy for the Covered Auto if *ceteris paribis*, Plaintiff had <u>not</u> combined the Prior Loan Amount into the Combined Loan." [Doc. No. 100-4 at 3].

     b. *Interrogatory No. 16 and Request for Production No. 25: Identify the following for each claim you have processed under the Auto Loan/Lease Coverage Form submitted by any Oklahoma insured whose loan or lease for the covered automobile included or was combined with any outstanding balances from prior loans or leases: (1) the original amount due on the lease or loan for the insured's covered automobile; (2) the amount of any prior loans that were originally included in or combined with the original amount due on the lease or loan for the insured's covered automobile; (3) the total outstanding amount due on the lease or loan for the insured's covered automobile at the time the insured's covered automobile became a total loss; (4) the total of any of the following amounts included within and a part of the total outstanding amount due on the lease or loan for the insured's covered automobile at the time the insured's covered automobile became a total loss: (a) overdue loan/lease payments at the time of the loss; (b) financial penalties imposed under the lease for excessive use, abnormal wear and tear or high mileage; (c) security deposits not refunded by a lessor; and (d) the cost of extended warranties, Credit Life Insurance Health, Accident or Disability insurance purchased with the loan or lease.*[13]

     Safeco contends these requests are burdensome and part of a speculative fishing expedition. The Court agrees. These requests impose no temporal limit, and they ask for significant amounts of information that are not relevant to Dodd's claims. These requests

---

     [13] Request for Production No. 25 states: "Produce documents that identify the following for each claim you have processed under the Auto Loan/Lease Coverage Form that was submitted by or on behalf of any Oklahoma insured whose loan or lease for the covered automobile included or was combined with any outstanding balances from prior loans or leases: (1) the original amount due on the lease or loan for the insured's covered automobile; (2) the amount of any prior loans that were originally included in or combined with the original amount due on the lease or loan for the insured's covered automobile; (3) the total outstanding amount due on the lease or loan for the insured's covered automobile at the time the insured's covered automobile became a total loss; (4) the total of any of the following amounts included within and a part of the total outstanding amount due on the lease or loan for the insured's covered automobile at the time the insured's covered automobile became a total loss: (a) overdue loan/lease payments at the time of the loss; (b) financial penalties imposed under the lease for excessive use, abnormal wear and tear or high mileage; (c) security deposits not refunded by a lessor; and (d) the cost of extended warranties, Credit Life Insurance Health, Accident or Disability insurance purchased with the loan or lease." [Doc. No. 100-6 at 2–3].

also are exceedingly overbroad, overly burdensome, and not proportional to the needs of the case. The Court denies Dodd's motion as to these requests.

    *c.* *Interrogatory Nos. 19, 21, 23, 24, and 25.*

    Safeco objects to answering these interrogatories because it argues that Dodd exceeded the number of interrogatories permitted by Rule 33(a)(1). Under that rule, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). According to Safeco, Interrogatory Nos. 16 and 17 "include separate and distinct lines of inquiry," such that each constitutes seven distinct interrogatories. [Doc. No. 106 at 16]. Safeco asserts that Dodd therefore "surpassed his twenty-fifth interrogatory" at Interrogatory No. 17. *Id.*

    As another district court has noted, "[t]here is surprisingly little case law as to what constitutes a single interrogatory and what constitutes a 'discrete subpart.'" *Nance-Bush v. Lone Star Coll. Sys. Dist.*, 337 F.R.D. 135, 137 (S.D. Tex. 2021). The parties have not identified, and the Court has not located, any decision from the Supreme Court, Tenth Circuit, or any other court of appeals that has taken up this issue. The advisory committee's note offers some guidance: it explains that parties cannot avoid the 25-interrogatory limit by "joining as 'subparts' questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication." Fed. R. Civ. P. 33(a) advisory committee's note to 1993 amendment.

Dodd points out that some district courts have extrapolated a "common theme" test from the advisory committee's guidance. [Doc. No. 109 at 8–10]. Under this standard, "'an interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question,' while an interrogatory with 'subparts inquiring into discrete areas is likely to be counted as more than one for purposes of the limitation.'" *Pouncil v. Branch L. Firm*, 277 F.R.D. 642, 646 (D. Kan. 2011) (quoting 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2168.1 (3d ed. 2010)); *but see Nance-Bush*, 337 F.R.D. at 137–38 (describing other standards courts apply to make this determination, such as the "related question" and "full and complete answer" tests). Dodd argues that Interrogatory Nos. 16 and 17 should be treated as two interrogatories—not fourteen—because they ask Safeco to identify "(1) the original auto loan balance; (2) the original carry-over amount included in the original auto loan balance; [and] (3) the unpaid balance of the auto loan at the time of the loss." [Doc. No. 109 at 9]. Thus, Dodd asserts, these two interrogatories' subparts "elicit details concerning a '*common theme*', *i.e.*, the '*increased financial benefit derived*' by Safeco through systematically using the same flawed interpretation of the GAP Rider's carry-over balance exclusion to underpay all claims for GAP coverage." *Id.* at 10.

Dodd's formulation of the "common theme" test would nullify the 25-interrogatory rule. The common theme Dodd identifies—Safeco's increased financial benefit from applying its interpretation of the policy—is a broad statement that essentially describes Dodd's theory of the case. A plaintiff in a tort case could not justify

a single interrogatory with thirty distinct subparts by asserting that the subparts all elicit details about the defendant's negligence. Considering such discrete interrogatories as one would defeat the purpose of the 25-interrogatory limit. So too here. These subparts may relate to one common, broad theme, but they each seek discrete information rather than details about a single, properly focused inquiry.

Dodd's Interrogatory No. 4 is an example of an interrogatory with subparts that constitute a single question. There, Dodd asks Safeco to identify each expert witness who might testify at trial. [Doc. No. 106-2 at 5–6]. The interrogatory includes seven subparts asking Safeco to provide information such as the witnesses' names and addresses, their expected testimony, and their qualifications and compensation. This interrogatory demonstrates the advisory committee's guidance to Rule 33(a), as it seeks information about a single, discrete subject—the testimony of Safeco's expert witness(es)—even though it asks Safeco to state details about that subject separately.

In contrast, each subpart to Interrogatory Nos. 16 and 17 is loosely related to the same theme, but each seeks discrete information that is not closely tied to one specific inquiry. There is no single primary question these subparts seek details about. Instead, each subpart seeks entirely separate information about each claim Safeco has processed for an Oklahoma insured with a combined lease or loan. Safeco's answer to subpart (1) ("the original amount due on the lease or loan for the insured's covered automobile") is likely to be entirely distinct from its answer to subpart (2) ("the amount of any prior loans that were originally included in or combined with the original amount due on the lease or loan for the insured's covered automobile"). *See* [Doc. No. 100-4 at 3–5]. Likewise, each

of subpart (4)'s respective subparts seek discrete information about the amounts due on insureds' leases or loans at the time the insured's automobile became a total loss. Each of these sub-subparts, while loosely tied to a single theme, seeks entirely distinct information that neither builds upon nor relies on any of the other subparts. Therefore, the Court finds that each of the subparts in Interrogatory Nos. 16 and 17 is discrete; these interrogatories should both be counted as seven distinct interrogatories for a total of fourteen.

Accordingly, the Court agrees with Safeco that Dodd surpassed his twenty-fifth interrogatory at Interrogatory No. 17 and that Interrogatory Nos. 19, 21, 23, 24, and 25 are improper. The Court denies Dodd's motion as to Interrogatory Nos. 19, 21, 23, 24, and 25.

\*    \*    \*

To summarize, the Court grants in part and denies in part Dodd's second motion [Doc. No. 100]: as set forth above, the Court compels a response or answer by Safeco to Request for Admission No. 6 and Interrogatory No. 15; the Court denies Dodd's motion as to Interrogatory Nos. 16, 19, 21, 23, 24, and 25 and Request for Production No. 25. The Court ruled on Interrogatory No. 7 and Request for Production No. 15 as described in its analysis of Dodd's first motion.

21

3. **Third Motion [Doc. No. 102]**[14]

   a. *Requests for Production Nos. 30 and 31: Produce all documents you filed with the Oklahoma Insurance Department for purposes of obtaining approval of any edition of Policy Form No. SA-1914/EP and in connection with Filing No. 94-1929-P.*

Safeco maintains these requests are irrelevant and disproportionate to the needs of the case. Dodd argues that since these regulatory submissions require Safeco to provide detailed descriptions and explanations of the coverage provided and rationale behind any changes in language, such materials are crucial to his claims. As drafted, the requests exceed the proper scope of discovery under Rule 26. The Court partially grants Dodd's request. Safeco is only required to produce the submissions relating to the language of the Auto Loan/Lease Coverage form that was part of Dodd's policy and in effect at the time of his claim.

B. **Safeco's Discovery Motions**

   1. **First Motion [Doc. No. 104]**

In its first motion, Safeco seeks to compel Plaintiff's wife, Kelly Dodd, to comply with a subpoena to produce documents. In her response, Kelly Dodd states she has now complied with the subpoena. [Doc. No. 116]. She also concedes that she has waived any objections she may have had to the subpoena. [*Id.*]. Accordingly, the Court concludes this motion has been resolved and is denied as moot.

---

[14] Safeco has agreed to provide the requested material as narrowed by Dodd. [Doc. No. 112 at 2; Doc. No. 115 at 1]. Thus, insofar as it pertains to Dodd's Request for Production No. 29, this request is moot. *See* Fed. R. Civ. P. 11(b)(3) (discussing attorneys' obligations to certify the accuracy of every factual contention presented in any submission to the court).

2. **Second Motion [Doc. No. 105]**

   a. *Interrogatory No. 7: Set forth in detail (a) the dollar amount(s) of any item of damages (including, but not limited to, any alleged compensatory and punitive damages) to which you contend you are entitled as a result of the conduct alleged in the Complaint, (b) describe the primary (or material) factual bases that support your contention, and (c) describe how such damages were calculated.*

Safeco states that Dodd did not fully answer this interrogatory because he has not provided specific amounts relating to his mental and emotional distress, financial hardship, attorney expenses, or other incidental damages despite alleging such damages in his complaint, and because he has not provided the factual bases for the same. Dodd argues that his non-economic damages are difficult to quantify and best left for the jury to decide.

If Dodd intends to request from the jury a specific dollar amount for his mental and emotional distress or financial hardship (or suggest one in arguments to the jury), then he must respond to Safeco's discovery request and provide a computation of the same. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring that a "party must . . . provide to the other parties . . . a computation of each category of damages claimed by the disclosing party . . . ."); *see also* OUJI-CIV 22.4 (3d. ed.) (noting that financial losses, embarrassment and loss of reputation, and mental pain and suffering are elements of damages for a bad faith claim). "Otherwise, [he] may not request from or suggest to the jury a specific amount or range of compensation for these damages." *Hancock v. Greystar Mgmt. Servs., L.P.*, No. CIV-15-1095-R, 2016 WL 2889084, at *1 (W.D. Okla. May 17, 2016) (citing Fed. R. Civ. P. 37(c)(1)).

Regarding his attorney fees, without prematurely adjudicating in the context of a discovery dispute whether attorney fees could be part of damages in this action, the Court finds that if Dodd intends to request attorney fees, then he must respond to Safeco's discovery request and provide a computation of the same. If he does not intend to seek attorney fees as part of damages, then the request by Safeco is premature and may be reasserted by Safeco following a judgment on the breach of contract and bad faith claims, if Dodd prevails and intends to make a post-judgment request on attorney fees.

The requests in (b) and (c) of Interrogatory No. 7 seek information within the scope of Rule 26(b)(1), and Dodd is ordered to respond to all parts of the request, to the extent set forth or limited above.

Consequently, the Court grants Safeco's request to the extent set forth in this order and otherwise denies it.

> b. _Requests for Production Nos. 2 and 3: Produce all documents, correspondence, audio tapes, electronic or digital recordings, emails, or other memorializations comprising, constituting, evidencing or relating to communications from you, or anyone acting on your behalf, to Safeco, and from Safeco to you, or anyone acting on your behalf, concerning the subject policy of insurance, the claim(s) under said policy, or the allegations set forth in the Complaint._

Dodd answered these requests by saying he would produce all "relevant" documents. In light of Dodd's claims, the Court finds that these requests are proper and within the confines of Rule 26. The Court grants Safeco's motion as to these requests. Dodd must produce the requested documents regardless of whether he deems them relevant.

24

    c.  *Request for Production No. 6: Produce a copy of each policy of insurance*
       *Plaintiff maintains was in full force and effect at the time of the events alleged*
       *in the Complaint.*

    Safeco argues that if Dodd had additional insurance policies covering the vehicle, it weakens Plaintiff's claim that he underwent financial hardship because of Safeco's conduct. Dodd argues that such documents are irrelevant. The Court grants Safeco's motion as to this request but limits it to include only insurance policies that covered the vehicle in question because requiring Dodd to provide information about other forms of insurance (*e.g.*, health, life, or homeowners) would be irrelevant and not proportional to the needs of the case.

    d.  *Request for Production No. 11: Produce all documentation regarding*
       *Plaintiff's loan against the Ford F150 SuperCrew, including any loan from*
       *Tinker Federal Credit Union ("Tinker"). This Request includes, but is not*
       *limited to, the initial loan agreement, including documents reflecting the*
       *balance carried over from any prior loan, the payment history for the duration*
       *of the loan, and the manner in which Tinker applied loan payments to you loan*
       *balance.*

    The parties seemingly dispute whether Dodd has fully complied with this request. Since the Court finds the request relevant and proportional to the needs of the case, Dodd is ordered to produce the requested documents to the extent he has not already done so.

    e.  *Requests for Production Nos. 12 and 19: Produce all documents which*
       *evidence, support, refer or relate to your claims for damages in this action,*
       *including but not limited to any computation of damages, or element(s) thereof,*
       *and any documents that support, underlie, were created, or were reviewed or*
       *relied upon in computing any elements of damages; produce all documents*
       *supportive of your contention that you have suffered damages in the manner*
       *alleged in Paragraph 27 of the Complaint.*

    As Dodd does not object to these requests, he is ordered to provide the requested documentation to the extent he has not already done so.

f.   *Request for Production No. 23: Produce all Schedule C (Form 1040 or 1040-SR) forms filed with the United States Internal Revenue Service by you, and/or by any business in which you are an owner, member, manager, officer, or director, for 2015-2018.*

Safeco asserts that because Dodd maintains he suffered financial hardship as a result of its actions, his financial condition is relevant to the litigation. Conversely, Dodd argues that since his allegation of financial hardship pertains only to the economic losses he incurred due to the denial of insurance coverage, this request is inappropriate.

If a plaintiff puts his financial condition at issue, then a defendant may properly inquire into the plaintiff's financial records. *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518 (N.D. Okla. 2003); *see also Biliske v. Am. Live Stock Ins. Co.*, 73 F.R.D. 124, 126 n.1 (W.D. Okla. 1977) ("Where the litigant himself tenders an issue as to the amount of his income, there is no privilege against disclosure of his tax returns and they become legitimate subjects of inquiry under discovery procedure."). Here, Dodd has put his financial condition at issue by alleging that Safeco's bad faith caused him to suffer "financial hardship." [Doc. No. 1-2 ¶ 27]. The Court recognizes "that a public policy against the unnecessary public disclosure of tax returns indicates that a Court should not require the production of tax returns where the information sought is readily obtainable by other means or from other sources." *Biliske*, 73 F.R.D. at 126 n.1. Nevertheless, because Dodd has not shown to the Court that the information sought is readily obtainable by other means or from other sources, Safeco's motion as to this request is granted and Dodd is required to produce the requested documents. *See id.*

\*       \*       \*

To summarize, the Court grants in part and denies in part Safeco's second motion [Doc. No. 105] and, as set forth and as limited above, compels responses or answers by Dodd to Interrogatory No. 7 and Requests for Production Nos. 2, 3, 6, 11, 12, 19, and 23.

### 3. **Third Motion [Doc. No. 113]**

Dodd has filed a subpoena requesting that Safeco's expert witness, Diane Luther, produce sixteen categories of documents and communications. [Doc. No. 107]. In response, Safeco filed on its own behalf a motion to quash or motion for protective order [Doc. No. 113], which asserts that Dodd's subpoena directed at Ms. Luther improperly seeks privileged information and requests information that is not relevant to the action. Dodd argues that Safeco's motion is a "blanket" assertion of privilege that the Court should overrule because Safeco did not provide a privilege log. [Doc. No. 124 at 4].

On the same day Safeco's counsel filed the motion, he also submitted to Dodd written objections to the subpoena on Ms. Luther's behalf. [Doc. No. 125-3 at 1]. Under Federal Rule of Civil Procedure 45(d)(2)(B), when served with a subpoena duces tecum, a non-party may object to the subpoena in writing. Once the subpoenaed person makes an objection, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). If the Court grants such a motion and enters an order compelling production, "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii).

After Ms. Luther submitted her written objections, Dodd did not file a motion to compel, and the deadline to do so has expired. Thus, Safeco argues, by operation of the

rule, Dodd's arguments in opposition to Safeco's motion are of no practical effect because "Ms. Luther has no obligation to provide further documents pursuant to the Subpoena." [Doc. No. 125 at 10–11].

The Court agrees with Safeco. Various authorities have interpreted Rule 45(d)(2)(B) to mean that a written objection "suspends the non-party's obligation to comply with a subpoena commanding production of documents, pending a court order." *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 44 (N.D. Tex. 2015); *see SEC v. Hyatt*, 621 F.3d 687, 694 (7th Cir. 2010) ("[U]nder Rule 45[ ], intervening court involvement is required prior to initiation of contempt proceedings if the recipient of the subpoena serves a written objection on the party or attorney designated in the subpoena."); 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2456 (3d ed. 1998) (Apr. 2025 update) ("If the person subpoenaed objects . . . the party who served the subpoena may not inspect, copy, test, or sample the materials unless that party obtains a court order to this effect."). Once a non-party objects to a subpoena, that person is "not obligated to produce the subpoenaed documents, or even to search for them," until the party seeking discovery obtains "an order directing compliance." *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983). Even if the Court were to deny Safeco's motion to quash, such an order is not "an order directing compliance." *See id.* The Court cannot issue an order compelling Ms. Luther to comply with Dodd's subpoena because "[a] request for a

court order must be made by motion," Fed. R. Civ. P. 7(b)(1), and Dodd has made no

such motion.[15]

Ms. Luther is only required to produce documents responsive to Document

Request No. 15—to the extent she has not already done so—as that is the only request to

which she did not object. Ms. Luther is otherwise under no obligation to comply with the

subpoena. Thus, a ruling on Safeco's motion would not affect any person or party's rights

or obligations, nor would it be possible for the Court to grant any effectual relief by

granting or denying the motion. Accordingly, the Court denies Safeco's motion as moot.

### 4.  **Fourth Motion [Doc. No. 137]**

Lastly, the Court addresses Safeco's Motion for Entry of Protective Order. [Doc.

No. 137].[16] Safeco argues that Dodd's Amended Notice to Take Deposition [Doc. No.

130] of Safeco's corporate representative is not drafted with reasonable particularity as

required by Federal Rule of Civil Procedure 30(b)(6) and seeks information outside the

proper scope of discovery. In response, Dodd asserts that the information he seeks is

---

[15] As noted, the deadline for Dodd to file a motion to compel has expired. [Doc. No. 103]. The parties had until April 15, 2024, to file discovery motions "absent extraordinary circumstances." [*Id.* at 1]. Without prejudging any future motions, the Court notes that it is unlikely to find extraordinary circumstances if a party files an untimely discovery motion regarding any issues the parties were aware of before the deadline's expiration or that could have been raised with the disputes addressed in this order.

[16] Rule 26(c) sets forth the procedure for seeking a protective order: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery [and] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D).

relevant and that Safeco has failed to carry its burden by demonstrating the specific

undue burden responding to the noticed topics would impose.

Federal Rule of Civil Procedure 30(b)(6) sets out the standard for deposing a

corporation. It provides that in a deposition notice,

> a party may name as the deponent a public or private corporation, a
> partnership, an association, . . . or other entity and must describe with
> reasonable particularity the matters for examination. The named
> organization must designate one or more officers, directors, or managing
> agents, or designate other persons who consent to testify on its behalf; and
> it may set out the matters on which each person designated will testify.
> Before or promptly after the notice or subpoena is served, the serving party
> and the organization must confer in good faith about the matters for
> examination. . . . The persons designated must testify about information
> known or reasonably available to the organization. This paragraph (6) does
> not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6). The rule exists "because '[o]bviously it is not literally possible to

take the deposition of a corporation; instead . . . the information sought must be obtained

from natural persons who can speak for the corporation.'" *Cook v. Lynn & William, Inc.*,

344 F.R.D. 149, 153 (D. Mass. 2023) (alterations in original) (quoting 8A Charles Alan

Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2103 (3d

ed. 1998) (April 2023 update)). "In a Rule 30(b)(6) deposition, there is no distinction

between the corporate representative and the corporation. . . . The designee testifies on

behalf of the corporation and thus holds it accountable." *Sprint Commc'ns. Co., L.P. v.*

*Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006) (footnotes and citations

omitted). Accordingly, "companies 'have a duty to make a conscientious, good-faith

effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare

them to fully and unevasively answer questions about the designated subject matter.'" *Id.*

30

(footnote and citation omitted). "A Rule 30(b)(6) witness is obligated to become educated to the extent possible about the identified topics, although perfection is not expected." *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121 (E.D. Mich. 2019).

Given this burden imposed on a responding entity, Rule 30(b)(6) imposes a reciprocal burden on the party seeking discovery to describe the information sought with "reasonable particularity." Fed. R. Civ. P. 30(b)(6). The federal rules do not define "reasonable particularity." Some courts have construed Rule 30(b)(6) to require a requesting party "to designate, with painstaking specificity, the particular subject areas that are intended to be questioned." *Sprint*, 236 F.R.D. at 528. At a minimum, "topics must be stated with enough specificity to allow the corporation to designate and prepare a representative to testify." *Edwards*, 331 F.R.D. at 121. Otherwise, "[a]n overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task" of preparing a corporate representative even though it "cannot identify the outer limits of the areas of inquiry noticed." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000). In addition to the reasonable particularity requirement, "[l]ike other forms of discovery, a Rule 30(b)(6) deposition notice is subject to the limitations under Federal Rule 26—deposition topics should be proportional to the needs of the case, not unduly burdensome or duplicative." *Bigsby v. Barclays Cap. Real Est., Inc.*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019) (citation omitted).

    a. <u>Topic Nos. 1 and 2.</u>

These topics address Safeco's standard procedures for processing Oklahoma claims for coverage under a GAP Rider provision. Safeco does not object to the substance

of these topics; instead, it asks the Court to limit the scope of these topics to the time period from 2014 to 2018. Dodd argues against this time limitation because the duration of Safeco's alleged misconduct is relevant for determining punitive damages.

As Safeco notes, the "decisive question" when considering a claim of bad faith by an insurer under Oklahoma law "is whether the insurer had a good faith belief, at the time its performance was requested, that there was a justifiable reason for withholding payment under the policy." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612 (10th Cir. 1994). It is true, as Dodd points out, that the "duration of [a defendant's] misconduct and any concealment of it" is one of seven factors that can justify an award of punitive damages. 23 Okla. Stat. § 9.1(A)(3). However, this fact does not necessarily open the doors to discovery without temporal limitation. Without a specified time frame, this topic is overly broad. It would unduly burden Safeco to require it to prepare a corporate representative to address the company's claim-processing procedures for the entirety of the company's existence. Therefore, the Court grants Safeco's motion as to this request and limits these topics to cover Safeco's procedures from 2014 to 2018 as requested by Safeco.

   b.  *Topic Nos. 3, 4, and 5.*

These topics ask Safeco's corporate representative to address the capability of Safeco's computer systems to produce information about all Oklahoma claims for coverage under a GAP Rider provision since 1993. Safeco asserts that these topics are not drafted with reasonable particularity, are disproportionate to the needs of the case, and seek irrelevant information about insurance claims other than Dodd's. Dodd argues that

Safeco's treatment of other insureds over a broad time frame is relevant to his bad faith claim. Dodd emphasizes that the topics do not ask Safeco's representative to produce documents about other insureds; instead, they only ask about Safeco's ability to produce these documents or data via its computer systems.[17]

Dodd is correct that harm to non-parties can be a relevant factor in "the punitive damages constitutional equation." *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007). Nevertheless, it would be overly burdensome to require Safeco's representative to accurately address the company's ability to access specified categories of information about every relevant claim for a span of over thirty years. The Court therefore imposes the same temporal limit on these topics as Topic Nos. 1 and 2; Dodd must limit these lines of questioning to the years 2014 to 2018.

    *c.   Topic No. 6.*

This topic asks Safeco to identify the "facts and circumstances, including the existence and location of any documents concerning" aspects of the drafting of the GAP Rider provision. [Doc. No. 130-1 at 5]. Safeco argues that such information is irrelevant extrinsic information that Dodd should not be able to obtain because the GAP Rider provision is unambiguous. Safeco additionally argues that this information "would

---

[17] Safeco expresses considerable consternation about Dodd's descriptions or summaries of his topics in his response. *See* [Doc. No. 139 at 5–6]. The Court previously indicated the parties will be on a schedule to complete required discovery and briefing on summary judgment and *Daubert* motions. [Doc. No. 103]; *see also infra*. This is so that a ruling can be issued on any dispositive motions, and the parties can be set on a trial docket as necessary. The Court expects Dodd will proceed within the confines of what he has represented to the Court and Safeco regarding his topics in his response, *see* [Doc. No. 138], subject to the Court's rulings and limitations imposed. *See* Fed. R. Civ. P. 11(b).

necessarily involve privilege issues," and it requests that the Court delay discovery into such matters—if it should deem them relevant—until the Court rules on dispositive motions. [Doc. No. 137 at 21]. Dodd asserts that this information is relevant because it might shed light on the meaning of the provision.

Whether or not the GAP Rider provision is ambiguous is an open question in this action. [Doc. No. 96 at 1]. The Court agrees with Dodd that this information is relevant to the meaning of the contractual provision. However, the Court limits this topic by omitting subtopic 6(b), which is overly broad and would impose an undue burden on Safeco. Whereas subtopic 6(c) is focused on the drafting of the particular phrase at issue in this case—"carry-over balances from prior loans"—subtopic 6(b) requests significantly more categories of information relating to the GAP Rider as a whole. In addition, the Court modifies this topic to relate only to non-privileged information. The Court declines to delay discovery on this topic until it rules on dispositive motions.

d. *Topic Nos. 7 and 8.*

These topics seek information about how Safeco calculates insurance premiums. Topic No. 7 asks about the calculation of premiums that Safeco charges all Oklahoma insureds whose policies include GAP Rider provisions. [Doc. No. 130-1 at 6]. Topic No. 8 seeks information about the calculation of Dodd's premium in particular. [*Id.*]. Safeco argues that these topics are irrelevant and disproportionate to the needs of the case. Dodd argues in response that these topics "will undoubtedly shed light on what Safeco actually understood and intended the disputed language within the GAP Rider to mean and what risks it was actually designed to cover." [Doc. No. 138 at 23].

34

The Court agrees with Safeco that Topic No. 7 is disproportionate to the needs of this case. Requiring Safeco's corporate representative to address how premiums are calculated for all Oklahomans whose policies include GAP Rider provisions would impose an undue burden, especially considering the marginal relevance of other insureds' premiums. Accordingly, the Court grants Safeco's motion as to Topic No. 7.

However, Topic No. 8 specifically addresses the calculation of Dodd's premiums, and the Court agrees with Dodd that Safeco's responses would shed light on its understanding of the GAP Rider's meaning. The reasonableness of Safeco's interpretation of the GAP Rider is relevant to this bad faith failure-to-pay claim. Because this topic is limited to Dodd's premiums and describes with reasonable particularity the matters for examination, responding to this topic would not impose an undue burden on Safeco. Therefore, the Court denies Safeco's motion as to Topic No. 8.

\*        \*        \*

To summarize, as set forth and as limited above, the Court grants in part and denies in part Safeco's fourth motion [Doc. No. 137]. Specifically, the Court modifies Topic Nos. 1, 2, 3, 4, and 5 to be limited to the years 2014 to 2018. The Court denies the motion as to Topic No. 6 but modifies that topic to omit subtopic 6(b) and otherwise to relate only to non-privileged information. The Court grants the motion as to Topic No. 7 and denies the motion as to Topic No. 8.

## IV.    CONCLUSION

As stated above, the Court grants Dodd's motion [Doc. No. 97], which reinstates [Doc. No. 25], and grants in part and denies in part Dodd's discovery motions as

delineated above [Doc. Nos. 25, 100, and 102]. The Court denies two of Safeco's motions [Doc. Nos. 104, 113] as moot, and grants in part and denies in part Safeco's remaining discovery motions as delineated above [Doc. Nos. 105, 137].

The parties have 7 days from the date of this order to produce any compelled discovery. *See* [Doc. No. 103].[18] The Court also reminds the parties that regardless of the Court's rulings, they have an obligation to timely supplement or correct disclosures or discovery responses under Rule 26(e). Additionally, if the parties intend to seek reasonable expenses, including attorney fees, in connection with any of the discovery rulings (to the extent not already addressed by the parties), *see* Fed. R. Civ. P. 37(a)(5), then they must confer promptly and attempt to resolve their dispute. If there are going to be disputes over expenses (including attorney fees) for discovery rulings, then the Court requires the parties to file their motions and applications for reasonable expenses (including attorney fees) within 14 days, or by April 28, 2025, and requires them to certify their efforts to confer and reach agreements and to avoid further discovery-related motion practice before this Court.

The previously imposed deadlines in the prior order [Doc. No. 103] now apply. Thus, the deadlines for conducting additional discovery (beyond that subject to this order) and filing discovery motions have expired. All dispositive and *Daubert* motions must be filed within 30 days of this order, or by May 13, 2025. The Court reminds the

---

[18] This deadline will be Monday, April 21, 2025. *See* Fed. R. Civ. P. 6(a)(1)(C). Should the parties seek additional time to comply with this order, they shall promptly confer and move the Court for any additional agreed extension.

parties that it previously set forth what the parties should address in their motions for summary judgment and responses thereto. *See* [Doc. No. 96 at 1–2]. The parties must also comply with Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. *See also* LCvR56.1(a) (explaining that "each party may file only one motion under Fed. R. Civ. P. 56" absent leave of court).

The Court intends to address the remaining pending motion, Dodd's motion for partial summary judgment [Doc. No. 128], at the same time it addresses Safeco's anticipated motion for summary judgment. The Court will not allow additional piecemeal briefing or supplementation of Dodd's motion based on the additional discovery ordered above. However, if Dodd wishes to use any of the forthcoming compelled discovery or otherwise revise his motion, he may withdraw his motion for partial summary judgment,[19] revise as he sees fit based on the additional discovery and this order, and refile the motion by the 30-day deadline noted above.

IT IS SO ORDERED this 13th day of April 2025.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[19] Any notice of withdrawal with intent to refile by Dodd of his pending motion for partial summary judgment must be done as soon as possible, but no later than 21 days of this order, or by May 5, 2025.